UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at COVINGTON

CIVIL ACTION NO. 10-54-GWU

STEVE RUSSELL, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

* * * * * * * *

The plaintiff appeals an administrative decision to terminate Social Security Income (SSI) and Disability Insurance Benefits (DIB) benefits originally awarded beginning April 21, 2006. The case is currently before the court on cross-motions for summary judgment.

**STANDARDS APPLICABLE TO TERMINATION DECISIONS**

When the issue is the termination of benefits, the regulations establish the following eight-step test:

1. Is the beneficiary engaging in substantial gainful activity? If so, then the disability will be found to have ended. See 20 C.F.R. § 404.1594(f)(1).

2. Provided the beneficiary is not engaged in substantial gainful activity, does the beneficiary have an impairment or combination of impairments which meet or equal the severity of impairments in the Listing? If so, then the disability must be found to continue. See 20 C.F.R. § 404.1594(f)(2).

3. If the beneficiary does not equal a listing, then the question is

whether there has been medical improvement (any decrease in the medical severity of one's impairments, as per 20 C.F.R. 404.1594(b)(1)).

4. Provided medical improvement has occurred, then the question is whether this has produced an increase in the residual functional capacity. If the improvement is not related to the ability to perform work activities, then one proceeds to step 5. If the improvement is related to work ability, then one proceeds to step 6. See 20 C.F.R. § 404.1594(f)(4).

5. Provided there has been no medical improvement or the improvement is not related to work ability, then one must decide whether an exception to the medical improvement standard will apply. If not, then a finding of continuing disability should be made. See 20 C.F.R. § 404.1594(f)(5).

6. If the medical improvement is found to be related to work ability or if an exception to the medical improvement standard applies, then one considers whether the current impairments in combination are severe. If so, then one proceeds to step 7; if not, the beneficiary is no longer considered disabled. See 20 C.F.R. § 404.1594(f)(6).

7. If the impairments are found to be severe, then one must assess the beneficiary's ability to engage in substantial gainful activity in accordance with 20 C.F.R. Sec. 404.1561. If found capable of performing past relevant work, then the disability will be found to have ended. Otherwise, one proceeds to step 8. See 20 C.F.R. § 404.1594(f) (7).

8. Provided the beneficiary cannot perform past relevant work, then one must assess the residual functional capacity and considering the age, education, and past work experience, determine whether other work can be performed. If so, then the beneficiary is no longer disabled. Otherwise, a finding of continuing disability should be made. See 20 C.F.R. § 404.1594(f)(8).

The standard for judicial review is whether there is substantial evidence to

support the Secretary's (now the Commissioner's) decision that the plaintiff's condition has improved to the extent that he can perform substantial gainful activity. Casiano, Jr. v. Heckler, 746 F. 2d 1144 (6th Cir. 1984).  The court must determine from the record upon what conditions the claimant was awarded benefits, and whether there has been any improvement in these conditions.  Id. at 1148.

**DISCUSSION**

The plaintiff, Steve Russell, filed applications for DIB and SSI in 2007, alleging disability beginning April 21, 2006 due to back, neck, and arm pain and numbness, depression, and side effects of medication.  (Tr. 111-13, 135).  An Administrative Law Judge (ALJ) determined that Mr. Russell had "severe" impairments consisting of a conversion disorder, degenerative disc disease, and depression and that his conversion disorder met the criteria of the Commissioner's Listing of Impairment (LOI) 12.07 from April 21, 2006 through February 20, 2009. (Tr. 17-18).  However, the ALJ found that medical improvement had taken place as of February 21, 2009, and that LOI 12.07 was no longer met.

Applying the guidelines at 20 C.F.R. § 1594 relating to cessation of disability due to medical improvement, the ALJ proceeded to find that the plaintiff's medical improvement was related to the ability to work.  (Tr. 21).  She presented a hypothetical question to a vocational expert (VE) asking whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were capable of "light" level exertion, and also had the following non-exertional

restrictions.  He: (1) could sit six hours in an eight-hour day; (2) could stand and walk two hours in an eight-hour day; (3) would need the option of sitting or standing every 30 minutes; (4) could occasionally climb (but not ladders, ropes, or scaffolds), stoop, bend, balance, and kneel; (5) could not crawl or reach overhead (but could reach in front); (6) could occasionally hold, grasp, and turn; (7) could have no exposure to vibration or hazardous conditions; (8) could perform simple, routine tasks with simple, short instructions; (9) could make simple, work-related decisions but should have few workplace changes; and (10) could have no contact with the public but could interact with coworkers and supervisors.  (Tr. 52-3).  The VE responded that there would be sedentary level jobs such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 53).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff asserts that the ALJ erred in finding there was medical improvement, and, even if the ALJ was correct on that point, it was erroneous to find that he had improved to the point he could engage in substantial gainful activity.

As previously outlined, the regulations provide that disability benefits may be terminated if there has been any medical improvement, if the improvement is related to the ability to work, and if the claimant is currently able to engage in substantial gainful activity.  20 C.F.R. §§ 404.1594(a); 416.994(a).  "Medical

improvement" is "any decrease in the medical severity of . . . impairment(s) [that] was present at the time of the most recent favorable medical decision that [the claimant was] disabled . . . ."  20 C.F.R.  §§ 404.1594(b)(1); 416.994(b)(1).  A determination of medical improvement "must be based on changes (improvement) and the symptoms, signs and/or laboratory findings associated with [a claimant's] impairment(s) . . . " and is only related to an individual's ability to work "if there has been a decrease in the severity . . . of the impairment(s) present at the time of the most recent favorable medical decision and an increase in [the claimant's] functional capacity to do basic work activities."  20 C.F.R. §§ 404.1594(b)(3); 416.994(b)(3).

     The ALJ stated that she gave controlling weight to the opinions of Mr. Russell's treating psychologist, Dr. Tom Davis, and his treating neurologist, Dr. Bradley Mullen, for the closed period of April 21, 2006 through February 20, 2009.  (Tr. 19).  Dr. Davis completed a functional capacity form on July 19, 2007 indicating that he had seen Mr. Russell monthly for over a year, and diagnosed a conversion disorder and a depressive disorder due to daily depression and somatic preoccupation with, and reactivity to, stress.  (Tr. 333).  He was unable to meet competitive standards, in the psychologist's opinion, in maintaining regular attendance, being punctual, or completing a normal work day and workweek without interruption from psychologically-based symptoms or perform at a consistent pace without an unreasonable number and length of rest periods.  (Tr. 335).  In addition, he had a "seriously limited but not precluded" ability to maintain attention for two-

5

hour segments, to respond appropriately to changes in a routine work setting, to deal with normal work stresses, and to carry out detailed instructions. (Id.). He had no restriction on activities of daily living, and moderate difficulties in maintaining social functioning and concentration, persistence, or pace, along with "one or two" episodes of decompensation within a twelve month period. (Tr. 336). Nevertheless, the ALJ found that for the closed period the plaintiff had "marked" difficulties in maintaining social functioning and concentration, persistence, or pace, due to movement disturbance as a result of the conversion disorder. (Tr. 19).[1] This is sufficient to meet LOI 12.07.

No treating, examining, or non-examining reviewer gave an opinion regarding the plaintiff's functional capacities or ability to maintain social functioning and concentration, persistence, and pace early in 2009, at the time the ALJ found that medical improvement had occurred. The ALJ based her finding of medical improvement on the plaintiff's statements to Dr. Davis and to Jennifer Sampang, ARNP, in February 2009 that his mood was greatly improved and that he was only

---

[1] Although not specifically cited by the ALJ as a factor in meeting LOI 12.07, the physical limitations assessed by the treating neurologist Dr. Mullen were also explicitly given controlling weight. (Tr. 19). Dr. Mullen diagnosed cervical and lumbar spondylosis and clinical depression, and also mentioned anxiety and psychological factors affecting his patient's physical condition. (Tr. 386-7). He opined that Mr. Russell was not able to sit or stand long enough to perform full-time work, would have to lie down at unpredictable intervals during the day, could not bend or twist from the waist at all, and would be absent from work more than three times per month. (Tr. 386-9).

mildly depressed without suicidal ideation.  (Tr. 20).

While it is correct that Mr. Russell made some statements regarding improvement as noted by the ALJ (Tr. 469, 474), the immediately preceding office notes from both Davis and Sampang from January 2009 are to the contrary.  On January 26, 2009, Mr. Russell told Sampang that he was very depressed and had difficulty getting out of bed some days.  (Tr. 470).  She made objective findings of psychomotor retardation, a depressed mood, and a blunted affect, and diagnosed a major depressive disorder versus "depression secondary to a general medical condition," with a current Global Assessment of Functioning (GAF) score of 45.  A GAF score in this range reflects "serious symptoms . . . OR any serious impairment in social, occupational, or school functioning." Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34.  Clearly, despite indications of improvement on the next visit, Sampang's notes do not reflect a sustained improvement in functioning.

Likewise, the notes of Dr. Davis show variations in mood during 2008 and early 2009.  As the ALJ stated, a February 20, 2009 note reports a better mood and that Mr. Russell's "depression is lifted" (Tr. 474), but on January 4, 2009, he was reporting "a lot of highs and lows" and wishing some days that he was dead; Dr. Davis recorded his patient's mood as severely depressed with signs of conversion symptoms on January 21, 2009 (Tr. 476, 478). Finding medical improvement based on those parts of the psychologist's notes reflecting isolated improvement is dubious

at best, in the absence of a medical opinion from any examining, treating, or reviewing source.

Moreover, whatever else might be said about the status of the plaintiff's conversion disorder in 2009, the ALJ had given controlling weight to the functional restrictions of Doctors Davis and Mullen and these were never superseded by any new opinions regarding functional capacity from any source. Their restrictions, as cited above, are significantly more limiting than the factors given by the ALJ in a hypothetical question, and there is no apparent evidentiary basis for improvement. Thus, the hypothetical factors are not supported by substantial evidence.

The decision will be reversed and remanded for an award of continuing disability benefits to the plaintiff.

This the 30th day of November, 2010.

**Signed By:**

<u>*G. Wix Unthank*</u>

**United States Senior Judge**